Good morning. May it please the Court, I'm Tim Snyder on behalf of Farmers Insurance Defendants in this case. The trial court in this case erred in ruling that no-bill terms in settlements negotiated between farmers and providers that it had sued for insurance fraud, that those settlement terms violated the No-Fault Insurance Act in Minnesota. The court then compounded that error by conflating a violation of the No-Fault Act for which there is no private right of action with a statewide Deceptive Trade Practices Act violation, and he entered an injunction in joining the settlements in those terms. The first error is an error of statutory construction. The threshold legal question here was whether these no-bill terms violated the No-Fault Act. That ruling was the entire basis for the district court's injunction under the Deceptive Trade Practices Act and the basis for the court's liability holdings under the Minnesota Consumer Fraud Act. Now, under Minnesota statutory construction principles, the unambiguous plain text wins. That's the end of the inquiry. But the district court here expansively interpreted the No-Fault Act far beyond the specific language in the act. By first finding that these no-bill terms were a pre-established limitation on medical expense benefits. The problem with that holding is that medical expense benefits is a specifically defined term. And it, as the district court recognized, it says absolutely nothing about who provides services. It defines specific types of services that must be covered. And the no-bill terms did not either in effect or practice result in any limitations on the types of medical care. At most, the settling providers accused of fraud agreed to resolve those fraud claims that they would stop the billing, which was the basis for the lawsuits in the first place. Now, the district court, sua sponte, adopted its own analysis, not briefed by the parties, that the word any, in front of pre-established limitations, expanded it to cover any limits on anything, but lost sight, we think, of what the medical expense benefits language and definition is. Medical expense benefits reimburse for specific types of medical care. And the word any plus statutory silence does not permit the Court to expand beyond the terms to prohibit these type of settlement terms. The district court's interpretation would also render the next section, subparagraph 1C of the No-Fault Act, essentially superfluous. That's the provision that prevents an insurer from getting into contracts that have the effect of providing managed care services, meaning sending claimants to particular providers who are under contract with a health plan company. If those were already prohibited by the pre-established limitations prohibition, there would be no need or reason to have this separate prohibition on managed care services contracts. So the district court made that statutory interpretation error. The court made a second error, though, in finding that these no-bill terms created or had the effect of providing for managed care services. I mean, think about what the judge did here. He said that even if farmers entered into a settlement agreement with even one provider, where that provider said, yeah, I'll stop billing you guys. You got me. I'm not going to do it anymore. That that somehow created a managed care services network of every other provider in the state of Minnesota, tens and tens of thousands of providers, all of a sudden became essentially a managed care services program. Again, that's not what the words of the statute say. A managed care services program is defined as a program of medical services that uses providers under contract with a health plan company. Farmers is not a health plan company. And these settlements did not result in anybody becoming under contract with a health plan company. The settling providers certainly didn't. And neither did the tens of thousands of other providers in the state become under contract with or managed by a health plan company. And the settlements don't have the effect of doing that either. Nothing in the settlements directed any claimants to seek treatment with providers who were managed or under contract with a health plan company. All the settlements did was the providers who had been sued for insurance fraud agreed that they would stop the billing that led to the fraud claims in the first place. Yes, Your Honor. So if I wanted to go to a chiropractor who had entered into one of these no-bill agreements and then I billed my insurance, would farmers pay in that case? Well, so if you went to a chiropractor and you received treatment, the provider could choose to provide you treatment. Nothing in the settlements prevented the provider from doing that. If the provider then billed for that treatment, under the terms of the settlement, the provider agreed that that bill was waived. Now, would farmers have paid the bill? It might have. The record was that notwithstanding these settlement terms, they would consider the bill. They might deny it under the settlement agreement. The fact is, though, that that didn't happen. There's just no evidence. And if you look at even the named plaintiffs, the one who was turned away from the provider of his choice, and that's disputed, received treatment from another chiropractor and had all of his medical bills paid, there's no evidence in this case that any of the named plaintiffs or the class, as it's been alleged, had any medical treatment denied or any medical bills not paid because of these no-bill settlement agreements. So, and just as a matter of straight statutory interpretation, that was the foundation for the injunction, and it just doesn't fit the language of the statute. The legislature could have decided to do what Judge Chunheim thought they did, which is to say, look, you can't have any limits on provider choice. And they've done that in other statutes with respect to auto repair shops. There's a specific statute that says you get to choose any auto repair shop. But they didn't do that with respect to providers under the No Fall Act. Instead, they more narrowly circumscribed the limitation on the who question to managed care services. And that, these settlements did not create a statewide, they did not reverse engineer managed care services under any interpretation of that statute. So if anyone else has questions, I was going to move to the fraud portion of the argument. Because even if this Court agreed that there was a technical violation of the No Fall Act by virtue of these settlement agreements, that still does not equate to a deceptive trade practice. In the Court, after we filed our opening brief, the Court issued a supplemental decision on a stay motion. And in that opinion, the Court clarified for the first time that he enjoined farmers not because of the fraud by omission theory advanced by the plaintiffs, but because farmers could no longer certify that its policies complied with the No Fall Act. And he, the judge, viewed that as a deceptive trade practice. And the judge didn't have the benefit of briefing on that issue, because the plaintiffs had disclaimed this theory. This was not the theory that they had pursued. And had the judge had the benefit of briefing on that issue, we would have directed him to the Illinois Farmers v. the Glass Services case. And what that case holds is that if the No Fall Act is changed by judicial decision or perhaps by, let's say the legislature while we're here, increase the policy limits from what farmers said to a higher number, farmers is not all of a sudden falsely certifying compliance to the Department of Commerce. Because farmers policy has a conformity clause, where if the law changes due to a law requires on a going forward basis. So it was simply error for the court to say that when he made that decision, all of a sudden farmers is making a false certification to the Department of Commerce. And what's even more kind of confusing about the judge's... So how would that work then going forward? So going forward, let's say that the No Fall Act requires you to not limit in the manner that farmers did. Farmers insurance policy states that it complies with the No Fall Act. And it has a... Then going forward, then farmers wouldn't... Farmers would comply with whatever the law is as declared by the judge. It's not a deceptive trade practice, though. Farmers did not engage in a deceptive trade practice the moment Judge Thunheim made his decision by all of a sudden its certification to the Department of Commerce is false because the judge has now said this is what the law requires. And he said because it's false going forward, I have to enjoin farmers. But that's not how it works because of the reasons I said, because of that conformity clause. And we didn't have a chance to brief this issue at the trial court. But that's... But going forward, but you want us to vacate the injunction because of the conformity clause, but then going forward, you would continue to use the no bill process even though the judge has said his view it's inconsistent with the Act. Where does that leave us? Well, we would ask that the injunction be vacated because there's no statutory violation. But if there was a statutory violation, there's no private right of action under the No Fall Act. And what occurred here, even if it was a No Fall Act violation, is not a deceptive trade practice. You know, even to analyze the deceptive trade practice, aren't we going to have to start to look at what the allegations are under the Minnesota Consumer Fraud Act, right? And if you look at what the allegations are, they never alleged that you had any special duty to disclose that existed under the No Fall Act or any other contract. They never alleged that there was a billing limitation that violated the No Fall Act at that point, right? And so, I mean, I mean, and I know that's not even, I don't know. I think that's not before us. But can construction of that pleading inform the deceptive practices claim? I mean, it's a mess because of the way that it's coming before us, right? Because no right to the interlocutory appeal on the denial of summary judgment on the consumer fraud. But to really understand what the failure is under the Deceptive Practices Act, you have to understand how it fits within the consumer fraud somehow. That's right. It is very honestly, for me too, confusing how we got from a violation of the No Fall Act to a deceptive trade practice. We assumed when we filed our opening brief that the judge was following what the plaintiffs had said, which was this was a fraud by omission claim. And we explained in our appeal that the judge read one of the requirements out of that, the duty to disclose. Because just because you have material information and exclusive knowledge of that, the Minnesota Supreme Court has been very clear. That doesn't trigger a duty. You have to have knowledge of actual fraud. And the judge read that requirement, in our view, out of the very case that he cited for the proposition, which is Bublek. And then every subsequent case, including graphic communications, has made that clear, too. So there's two problems here. There's a statutory interpretation problem. But if this Court were to agree with the district court that, yeah, I think these no-bill terms went too far into the terms of the statute, that doesn't mean it's consumer fraud and that doesn't mean it's a deceptive trade practice. Because farmers has not — and it's interesting. The judge found there was no breach of contract here. So all farmers promises to provide the coverage required by State law. The judge said, by entering these no bills, you didn't breach your contract. But somehow we're also — or farmers is also falsely certifying the moment he makes a ruling that its policies comply with the law when they do not. And it just — it doesn't hang together. And so we're asking the Court to vacate the — that the practice violated the No-Fault Act. Even if we vacated it based on the lack of fraud. Well, let's take a scenario. If this Court were to say, look, we agree that the No-Fault Act was violated by these no-bill terms, yet we find that it's not a deceptive trade practice and we vacate the injunction, that would be a permissible ruling. And certainly insurance companies in the State, including farmers, would be very ill-advised to continue to engage in — even though there's not a private right of action for it under deceptive trade practice. Why would we give an opinion on the No-Fault Act if we agreed with you on the lack of a deceptive trade practice? Well — You're saying even if we violated a No-Fault Act, we didn't engage in a trade practice because we have this conformity clause. So if the Court decided the case on that basis, then you could continue to engage in this practice. Well, to the extent there's two settlements that are still in place, that is true. That's one resolution. Would there be some other way — I guess some other way to establish that this practice violates the Act? If it did, could you go to the Department of Commerce? Well, absolutely. There's many remedies available to plaintiffs. There's the Department of Commerce, who, by the way, has learned of this practice and issued a letter of no further action. There is a private plaintiff who has agreed by this could bring an arbitration claim or an individual claim for damages and say, look, I didn't get my benefits because of this practice. There's many, many ways this could get teed up. What plaintiffs want to do is have this teed up as a statewide deceptive trade practices act as a class action case. And it just — it doesn't work. And I'm out of time, and I'm out of my rebuttal time, too. Yes, you are. Well, thank you for your argument. Thank you. Mr. Asp, we'll hear from you. Thank you, Your Honor. May it please the Court. There are two issues to decide in this interlocutory appeal. One of them is about the deceptive trade practice act, whether farmers' conduct violated that statute. And I want to talk specifically about that statute. And the second issue is the related question of whether farmers' billing limitations violated the No Fault Act and how it violated the No Fault Act. Those are the only two issues before you, even though Farmers seeks to expand the appeal to include the consumer fraud claim, a claim on which the district court found disputed facts and set it for trial. This effort to expand the appeal is contrary to law. This Court has long held that interlocutory review under 1292A is limited. And in the Fogey case, you said it's limited to the issues that are the necessary predicate for the appeal. The cases Farmers relies on are cases often in the qualified immunity context where appellate jurisdiction is under the collateral order doctrine, which is itself a narrow basis for appellate jurisdiction, but there's no basis to apply those cases here. So I want to encourage you first to limit the issues and then discuss those two issues which are addressed in the district court's order. I want to address this idea that no one had ever raised the deceptive trade practices claim, that I think Mr. Snyder said it was raised to a sponte in a state order. That's simply not true. I'll refer you to the complaint. That's Appendix 3. At page 24, we pled, and I quote, Farmers engaged in deceptive trade practices by making representations about compliance with the No-Fault Act that deceived consumers. Then in our briefing, Supplemental Appendix at 190, we did not disavow the allegation that the selective quote that Farmers provides in its brief. Our brief actually argued the DTPA claim by saying Farmers has represented that its no-fault coverage has characteristics and benefits that it does not have, and Farmers has represented that its no-fault coverage is of a particular standard when it is not. And that's exactly what the district court said at its opinion at page 49. Starting at page 49, it said, Farmers says in its policies that these benefits comply with the No-Fault Act. That's representing a particular standard. The deceptive trade practices act doesn't include a duty to disclose or other requirements that Farmers has suggested. That's a separate statutory claim, and it prohibits deceptive conduct such as saying that a product meets a standard when it doesn't. And that's exactly what Farmers did here. So every time that an insurance company artfully interprets the No-Fault Act, it is engaging in a deceptive trade practice in your world? No. Why not? Because it has to do with what is the deception. The cause of action is under the deceptive trade practice statute. So if you look at the statute, it prohibits representing the immediate standard that you don't meet or that you have a quality that you don't have. There are other provisions of the No-Fault Act that don't represent anything about the benefits available. This is specifically saying these benefits comply with the No-Fault Act, and then it lists the benefits. But they don't comply because they contain a hidden limitation that no one can know about. And that's really the deception here. If you are the class member, if you're in the injunctive class here, you do not know that farmers use the practice, so you don't even know that there are providers with whom you can't use your benefits. Well, is that alone, is that sufficient, that you don't know that there are some providers? Or do you have to go to the, well, it also violates the No-Fault? Yeah, thank you. And we argued separately that saying we're going to give you benefits and then not telling you about exclusions is also a deceptive trade practice. You can look at the same section of the brief where we argued that. But the district court looked at just the No-Fault Act violation as the basis. Well, a No-Fault recipient can file a No-Fault claim personally, right? Yes. There is nothing that said they couldn't go to this chiropractor, obtain the services, and when billed, submit the No-Fault claim. And whatever the hell this thing is between the provider and the No-Fault carrier, it does not bind the person who actually receives the benefit, right? Oh, that's true. Right, right. The recipient can bring a claim. And so what you're looking at, they haven't been denied, you know, the insurers haven't really been denied anything. You know, they would just, you know, what happens to them is they're told by the provider, well, I can't provide. So then they go somewhere else. But they could have gone to that provider, gotten a bill, submitted the bill, and it would have been subject to a claim for payment. If it was covered services. Sorry. Two responses. Because the money is not being paid at that point to the provider. It's being paid to the insurer. Well, typically, no. The reimbursement would go to the provider. But can I, I have two responses to that. One. No, the reimbursement wouldn't if you've already paid it, right? I mean, so I walk in, I pay a medical bill to a, it happens every single day. Sure. With non-participating providers, right? You go into the non-participating provider who says, we don't accept insurance from insurance company XYZ because they're slow to pay and they're difficult. But you can still get care, and you have to, you know, like before the Affordable Care Act, you had to submit the claim yourself. And that, you know, could still happen in a no-fault situation, right? And so at that point, the claim is made by the insured or the beneficiary of the insurance. And the payment is never, you've already paid the provider, it's never going to the provider. It's coming to you. Yeah, two responses. One, the law prohibits pre-established limits on benefits that prevent a claim from ever being created in the first place, which is what Farmers has done. And the record does show that individuals were turned away from providers. They went to the provider and said, I can't treat you because you have Farmers. The record also shows, to answer your question, Judge Kobus, that Farmers will deny a claim if it comes in from one of these providers. And I think Mr. Snyder's statement, to the contrary, was wrong. Weren't there just one or two instances? And I got my case confused a little bit. And weren't those resolved? Well, there was one instance. Didn't Farmers essentially say, whoops, that was a mistake. We're going to write that check? No. There's absolutely not. I may not be remembering that. Look at Plaintiff's Appendix 338. There's a letter where Farmers says, quote, based on the settlement, mid-century insurance farmers will not be able to honor pending bills and or charges for the above-referenced clinic. You are correct that that person sued Farmers. Farmers opposed it in litigation and paid the claim after losing the lawsuit for it. But more importantly, look at the testimony from Farmers' witnesses. Farmers' 30 v. 6 witness testified, and this is at Appendix 4, 220, testified, Farmers will not pay for any, quote, pay any bills within the period noted in the agreement, follow-up, any bills at all, answer, per the agreement during this period, right. We have deposition testimony from a claims reviewer who testified that if a provider was part of a no bill, that is just not even the person who signed it, but just referred to and included in the terms of the agreement that said Farmers would not honor the claim and it would deny it without investigation. That's at Appendix 1 at 262. So contrary to what you've suggested, even if someone went and used their benefits, it wouldn't necessarily be reimbursed later. But the overarching issue has to do with the No Fault Act, which is what I want to come back to here, because the statutory text is really important, and Farmers is proposing a reading of the statute that imposes limitations that are not in the text. The statute prohibits any pre-established limitation on the benefits. Now, we've said that's a broad statute. It means you put a limitation on where you can use the benefits. That is a pre-established limitation on the benefits. Farmers has told you what that means is that it would prohibit, for example, the number of treatments you could get at a provider or the dollar amount at a provider. But there's no textual basis for that distinction. There's no reason why the text would say, well, this limits the numbers, but not the source of where you get the treatment. What about the fact that 1C relates to sources? In other words, why would they do it in 1C if they also do it in 1B? Or would your interpretation of B make C superfluous? I want to make sure you're referring to the managed care provision, correct? Yeah. No, it wouldn't make it superfluous, because there are other situations where you could have a managed care network or something that has the effect of a managed care network that doesn't also put a limitation on the benefits. For example, one of the things that Subdivision 2 talks about is certain payments for pharmacy benefits. You could have a managed care network that provided incentive payments for certain types of benefits. You could create a managed care network that didn't have a pre-established limitation. Now, they might overlap, like they do here, but it doesn't make it superfluous. Let me also talk about that provision while we discuss it, because that's another area where I think Farmers has read the statute in a way that's inconsistent, or proposed an interpretation that's inconsistent with the text. The prohibition on managed care networks Farmers has suggested to you only applies to health plan companies. That's not what the statute says. What the statute says, it applies to a reparation obligure or a health plan company. That's the first sentence, and Farmers is definitely a reparation obligure. So the limitation applies to Farmers. It also says, when Farmers says, well, there's no managed care network here, that's a defined term, and we don't meet that definition, that ignores the part of the statute that says the effect of a managed care network. The effect of a managed care network is to pay for service to some providers and not for others. This is essentially a reverse managed care situation, where there are providers that are excluded. I want to address this issue that, well, there aren't that many, and if there was even one. I mean, the agreements themselves apply to more than just the provider that signed it. The agreements apply to providers who have any financial relationship with those providers. So that would mean, and this is also in the deposition testimony I cited, that if a provider signed one of these agreements and then owned 1 percent of a practice, that entire practice would be prohibited from billing Farmers. And that's in the deposition testimony that was Farmers Rule 30b-6 witnessed. Describe that. So when they say there's only two providers, they really have no idea how many providers would be limited because they won't know until they investigate and determine that there's a financial relationship between one provider and one practice or a different provider. And that's part of what makes this so deceptive. I mean, it represents that you get benefits as described in the No-Fault Act, but in fact, your benefits are limited in a way that you can't know, and the risk is not that you might just go to a provider that's limited or that Farmers decides it's limited, but that Farmers might start entering new agreements. They might have another year where they get 30 providers to sign one agreement, and then you're limited in a way that you can't know. That's the deceptive practice under the statute. I want to briefly address the issue that my friend raised about the conformity clause. I don't really understand how that argument was supposed to work either. If the No-Fault Act, if the provision violates the No-Fault Act, the conformity clause doesn't conform all of farmers' conduct to comply with the law. It would conform the terms of a policy to comply. So it's not a situation where, like you might understand that term, where a provision in the policy, if there was a written exclusion, for example, if they had actually put this practice in the policy, and you said, well, that's actually inconsistent with law, then you could say, well, that provision conforms. But in this case, the violation is farmers' practice more broadly, and that's the deceptive conduct. You're saying if the no billing had been in the contract, then the statute would cause it to conform by basically striking the provision? I mean, that might be the argument. I guess I'd have to look more carefully at what the contract said and what the statute said. But that's the way I would think about a conformity clause, is that it makes the terms conform to the law. It doesn't make farmers' conduct conform to the law, which is what I think they're saying. So what I would, I mean, I would encourage you to affirm the district court on the question presented, which are whether this is a deceptive practice, that is whether farmers says that its products have a standard, meet a standard when they don't meet that standard. And then the related question of whether it violates the No-Fault Act, and ask you to affirm the district court. All right. Thank you for your argument. You're eager to make rebuttal. You used all your time, though, the first time around. I did want to say a couple things. We'll give you one minute if you keep it to that. Please don't go over the time. I'll keep it to a minute. Thank you. Judge Erickson, you're correct. Under the district court's false certification theory, any violation of the No-Fault Act would result in apparently a false certification to the Department of Commerce that your policy complies when it doesn't. Our conformance argument is that on a going forward basis, what the judge enjoined farmers for is he said, look, you're now telling the Department of Commerce something that's not true because I just ruled you violated the law. Argument is, no, we didn't. Our policy will conform to whatever the law requires the No-Fault Act to be. And by the way, farmers made no false statement here to the class members. The statement in the farmer's policy is that it will provide benefits required by the law. It made no false statement. So what Mr. Asp argued is that they were deceptive because they hid something. That's an omission claim. That gets into duty and materiality, which the district court did not rightly decide. That's all I have. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. That concludes the session for this morning. The court will be in recess until 9 o'clock tomorrow.